J-S25032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1061 EDA 2024 |

Appeal from the Order Entered March 19, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000072-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: B.G.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1062 EDA 2024 |

Appeal from the Decree Entered March 19, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000145-2023

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED JULY 29, 2024**

J.M. ("Mother") appeals from the decree entered by the Philadelphia

County Court of Common Pleas ("orphans' court") terminating her parental

rights to N.M.,[1] born November 2020, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and the order changing N.M.'s permanency goal to adoption. Because we conclude that the orphans' court did not abuse its discretion in terminating Mother's parental rights and in changing the permanency goal, we affirm.

The orphans' court summarized the factual history of this case as follows:

> This family first became involved with [the Philadelphia Department of Human Services ("DHS")] in 2016 due to concerns regarding the safety and welfare of N.M.'s siblings prior to her birth. N.M.'s six siblings were committed to DHS and the case was open for Community Umbrella Agency (CUA) services when she was born. Mother was minimally compliant with her Single Case Plan (SCP) objectives [related to N.M.'s siblings.[2]]

> N.M, was born at Temple University Hospital (TUH) [in November] 2020. N.M. and Mother tested negative for substances at birth. However, DHS learned that Mother tested positive for cocaine, phencyclidine (PCP), and fentanyl while pregnant with N.M. On January 14, 2021, DHS received a General Protective Services (GPS) report alleging that two-month-old N.M. was admitted to St. Christopher's Hospital. The transfer records indicated that Mother had a history of cocaine use, and that all of N.M.'s siblings were in DHS placement. The report was determined to be valid. On January 20, 2021, N.M. was discharged from St. Christopher's Hospital and transferred to the

_____

[1] N.M. and B.G.M. are the same child. This is a consolidated appeal from the order changing N.M.'s permanency goal to adoption and from the decree terminating Mother's parental rights. For ease of review, we will refer to the child only as N.M.

[2] Mother's parental rights to her six other children were previously terminated. *See In the Interest of: M.B.-M.*, 2512 EDA 2023 (Pa. Super. filed May 30, 2024) (non-precedential decision); *In the Interest of: A.M.*, 744 EDA 2022 (Pa. Super. filed Oct. 21, 2022) (non-precedential decision).

Children's Hospital of Philadelphia (CHOP). The discharge summary indicated that N.M. was born premature, had respiratory issues, anemia, and other diagnoses associated with her premature birth. On January 24, 2021, Mother was escorted from CHOP by security after she threatened to remove [N.M.] against medical advice.

DHS obtained an Order of Protective Custody (OPC) for N.M. on January 25, 2021. At the January 27, 2021[] shelter care hearing, the [c]ourt found that N.M. was medically needy. The OPC was lifted and the temporary commitment to DHS was ordered to stand. Upon discharge from CHOP, N.M. was placed in a kinship foster home. N.M. has remained in DHS care since the OPC was obtained.

\* \* \*

N.M. was adjudicated dependent … [and was] fully committed to DHS on December 7, 2021. At the March 31, 2022, initial permanency review hearing, the [c]ourt found that Mother was minimally compliant with her SCP objectives and had made minimal progress toward alleviating the circumstances [that] brought [N.M.] into care. Permanency review hearings were held regularly throughout the case. At each permanency review hearing from 2021 to 2023, Mother's compliance with her SCP objectives ranged from none to moderate. Permanency review orders indicate that Mother made minimal progress toward alleviating the circumstances that necessitated N.M.'s placement.

DHS filed petitions to change the goal from reunification to adoption and to involuntarily terminate Mother's parental rights to N.M. on April 14, 2023. The [termination] hearing was held on January 30, 2024. Counsel for DHS called their first witness, CUA [c]ase [m]anager, David Matthews [("Matthews")]. N.T., 1/30/2024, at 4-104. [Matthews] testified that CUA was first assigned to this family in 2016 or 2017. He testified that he was assigned to this family's case in 2022. He testified that he maintained the CUA file and that he reviewed the entire file and history. [*Id.*] at 5. [Matthews] testified that N.M. came into DHS care at birth based on concerns regarding Mother's drug use during her pregnancy. [*Id.*] at 6. He testified that SCP meetings were held regularly throughout the case. [*Id.*] at 6-7.

- 3 -

Mother's SCP objectives were as follows: (1) address drug and alcohol concerns and submit random drug screens at the Clinical Evaluation Unit (CEU); (2) address mental health concerns; (3) sign all necessary consents and releases; (4) attend the Achieving Reunification Center (ARC) for parenting, housing, employment, and anger management classes; (5) complete a parenting capacity evaluation (PCE); and (6) comply with court-ordered visitation. [Matthews] testified that Mother's SCP objectives essentially remained the same throughout the case. [*Id.*] at 41. At the January 30, 2024, [termination] hearing, [Matthews] testified that Mother's compliance with her SCP objectives was minimal. He further testified that at that time, Mother made no progress toward alleviating the circumstances that brought N.M. into care. [*Id.*] at 41-42.

Orphans' Court Opinion, 5/3/2024, at 2-4 (record citations modified, footnote added).

Near the conclusion of the January 30, 2024, termination hearing, Mother indicated her desire to voluntarily relinquish her parental rights to N.M. N.T., 1/30/2024, at 149-50, 159-60.

Mother signed [p]etitions to [v]oluntarily [r]elinquish her [p]arental [r]ights [the same day]. The [c]ourt held its decision regarding involuntary termination of parental rights in abeyance to allow Mother's voluntary relinquishment petitions to mature. The matter was scheduled for March 19, 2024. Mother revoked the signed voluntary relinquishment of parental rights within thirty days. When the [termination] hearing reconvened on March 19, 2024, the trial court found that [DHS] presented clear and convincing evidence to involuntarily terminate Mother's parental rights pursuant to the Adoption Act, 23 Pa. C.S.[] §2511 (a)(1), (2), (5), (8) and § 2511(b) and changed N.M.'s permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S.[] § 6351.

Orphans' Court Opinion, 5/3/2024, at 1-2.

Mother timely appealed to this Court and complied with Pennsylvania Rule of Appellate Procedure 1925. Mother presents the following issues for review:

> 1. Did the [orphans' court] err in terminating [Mother]'s parental rights under 23 Pa.C.S.[] §§ 2511(a)(1), 2511(a)(2), 2511(a)(5), and 2511(a)(8)?
>
> 2. Did the [orphans' court] err in finding that termination of [Mother]'s parental rights best served [N.M.]'s developmental, physical, and emotional needs under 23 Pa.C.S.[] § 2511(b)?

Mother's Brief at 6.

In her brief, Mother solely challenges the termination of her parental rights and does not challenge the change of N.M.'s permanency goal from reunification to adoption. In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a

- 5 -

broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. *See C.M.*, 255 A.3d at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc) (quotation marks and citations omitted).

As stated above, the orphans' court terminated Mother's rights to N.M. pursuant to subsections (1), (2), (5), and (8) of section 2511(a). Orphans' Court Opinion, 2/7/2024, at 8. "This Court may affirm the [orphans'] court's decision regarding the termination of parental rights with regard to any one

subsection of [s]ection 2511(a)." *In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013). We focus our analysis on section 2511(a)(8).

Mother argues that the orphans' court abused its discretion by terminating her parental rights pursuant to section 2511(a)(8) on the basis that she failed to comply with several of her SCP objectives. *See* Mother's Brief at 13. Mother asserts that she is now able to care for N.M., as she has attended parenting classes, receives social security benefits, has housing, and participated in substance abuse and mental health treatment programs. *Id.*

To terminate parental rights under section 2511(a)(8), the petitioner must prove: (1) the child has been removed from parental care for 12 months or more; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008); *see also* 23 Pa.C.S. § 2511(a)(8).[3] Notably, this subsection "does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the child[]." *Interest of M.E.*, 283 A.3d 820, 832 (Pa. Super. 2022). Rather, "the relevant inquiry regarding the

---

[3] Although separately enumerated, this Court has interpreted the needs and welfare analyses required under subsections (a)(8) and (b) to utilize the same legal standards and to be based upon the same evidence. *See Matter of Adoption of M.A.B.*, 166 A.3d 434, 448 (Pa. Super. 2017) (combining discussion of the children's needs and welfare pursuant to subsection (a)(8) and subsection (b) because the "third element of [s]ection 2511(a)(8) requires that the [o]rphans' [c]ourt conduct an analysis similar to that required under [s]ection 2511(b)").

second prong of [section] 2511(a)(8) is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." ***Id.*** (quotation marks and brackets omitted). Further, "[w]ith respect to any petition filed pursuant to subsection [(a)(8)], the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b); ***see also T.S.M.***, 71 A.3d at 255 n.8.

The orphans' court provided the following explanation for its decision to terminate Mother's parental rights under section 2511(a)(8):

> N.M. was born [in November] 2020, and is three years old. N.M. has been in care continuously since an OPC was obtained on January 25, 2021. She has spent over three years outside of the care and control of Mother. The record reflects that N.M. has resided with her current kinship foster parent for approximately two years. The conditions that led to N.M.'s placement included Mother's substance abuse, mental health, parenting capacity, anger management, and ability to keep N.M. safe. At N.M.'s birth, Mother had other children with open dependency cases. The same SCP objectives were established for Mother after N.M. was adjudicated dependent. Subsequently, Mother was ordered to complete a PCE at the March 31, 2022, initial permanency review hearing.
>
> Since N.M. has been in placement, Mother has made minimal to no progress toward alleviating the circumstances that brought N.M. into care despite attempts by CUA to facilitate reunification. [Matthews] testified at the January 30, 2024, [termination] hearing that Mother was minimally compliant with her SCP objectives and made no progress toward reunification. N.M. has been in foster care for over three years, which is an inordinate amount of time and is much longer than the statutory period requires for permanency. The conditions that brought N.M. into care continue to exist … .

At the January 30, 2024, [termination] hearing [Matthews] expressed concerns regarding Mother's mental health, substance use, anger management, parenting capacity, and ability to safely care for N.M. While Mother completed drug and alcohol treatment … in March 2021, she has subsequently tested positive for substances on various occasions at the CEU. [Although] Mother indicated that she was prescribed benzodiazepines and opiates for a health condition, CUA has been unable to verify her prescriptions. While Mother previously engaged in mental health therapy …, it is unclear whether she is still engaged, whether she takes mental health medication, or if the program addressed her specific mental health diagnoses. [Matthews] has also been unable to confirm Mother's treatment at … any … mental health provider and has been unable to obtain a treatment plan and progress report because Mother refused to sign the necessary releases. [Matthews] continues to have concerns for Mother's mental stability due to her inconsistent treatment and threatening behaviors toward CUA and DHS staff. While Mother completed an anger management program, [Matthews] continues to have concerns [about her] ability to control her anger due to her persistent threatening behaviors. Mother also failed to comply with the court ordered PCE to assess her ability to safely care for N.M. While Mother testified that she begged for a PCE, a PCE never occurred because Mother tested positive for opiates, failed to provide the evaluator with a list of her prescribed medications, and was not engaged in drug and alcohol treatment at the time.

There have also been numerous issues and incidents during Mother's visits throughout the case, which continued to exist as recent as Mother's last in-person visit in July 2022. Mother's supervised visits with N.M. were moved from CUA to DHS for increased security due to Mother's behaviors. However, following an incident in July 2022, Mother's visits were changed to virtual for the safety of N.M. and DHS/CUA staff. For these reasons, Mother's visitation never progressed beyond supervised [visits]. Additionally, Mother was inconsistent with visitation throughout the case, and the testimony reflects that Mother often ends visitation with N.M. early.

The evidence reflects that while there has been some compliance by Mother to complete her SCP objectives, there has not been enough progress to enable reunification of N.M. with Mother. Mother has failed to complete her SCP objectives to

alleviate the need for placement. … N.M. deserves permanency and should not wait indefinitely. Moreover, the evidence clearly established that termination would best serve the needs and welfare of [N.M]. N.M. has resided with the kinship parent for approximately two years and is well-adjusted in her home. She is bonded to the kinship parent who she looks to for love, support, care, and comfort. She also looks to her kinship parent to meet her basic needs as well as her emotional, therapeutic, and medical needs.

Orphans' Court Opinion, 5/3/2024, at 19-21.

Our review of the record supports the orphans' court's conclusions. The record reflects, and Mother does not dispute, that N.M. has been in care for nearly three years at the time of the termination hearing in January 2024. *See* Shelter Care Order, 1/27/2021. N.M. was removed from Mother's care primarily because of untreated substance abuse and mental health issues. N.T., 1/30/2024, at 6-8. Mother's SCP objectives were to attend drug and alcohol treatment and submit random drug screens, attend mental health treatment, sign all necessary consents and releases for medical information, attend parenting education classes, obtain and maintain housing and employment, attend anger management classes, complete a PCE, and comply with court-ordered visitation. *Id.* at 7-10. The record reflects that Mother has at least attempted to address several of her SCP objectives throughout the life of the case, as she has completed drug and alcohol treatment programs, she has attended parenting education classes and anger management programs, and she has housing suitable for N.M. *Id.* at 8-9. Nonetheless, the record reveals that most of the issues that led to N.M.'s

removal from Mother's care continue to exist, namely those issues relating to Mother's substance abuse and mental health issues, and that she has failed to fully comply with her SCP objectives.

At the termination hearing, Matthews testified that Mother tested positive for controlled substances on several occasions after she completed drug and alcohol treatment. *Id.* at 12-16. Specifically, Matthews testified that Mother tested positive for benzodiazepines on January 6 and 13, 2022, for alcohol on December 8, 2022, and for opiates on May 31, 2022, January 9, 2023, on February 21, 2023. *Id.* Mother's attempts to explain these positive test results are tenuous at best. With respect to the positive test results for the benzodiazepines, Mother provided a picture of a prescription pill bottle from Rite Aid in her name containing diazepam, but the bottle does not indicate when she filled the prescription. *See id.* at 15. For the positive test results for opiates, Mother points to a list of medications indicating that she had a prescription for hydrocodone that she filled on February 1, 2022, but this prescription predated her earliest positive test for opiates, by three months and there is no indication in the record she was permitted to refill the February 1, 2022 prescription. *See id.* Mother also points to a letter from a certified nurse practitioner indicating that she once again had a prescription for hydrocodone as of early 2023, but she presented no evidence of an actual prescription or that she ever filled a prescription for hydrocodone in January or February 2023. *See id.*, Exhibits M-5, M-6. Additionally, Matthews testified

that Mother on multiple occasions refused to attend drug screens. *Id.* at 17, 22, 51. Because of her multiple positive drug screens, Mother was unable to receive a PCE and was thus could not comply with that SCP objective. *Id.* at 35.

Regarding Mother's mental health treatment, the record reflects that she was diagnosed with post-traumatic stress disorder, generalized anxiety disorder, major depressive disorder, opioid dependence, PCP use disorder, and cocaine use disorder. *Id.* at 148. While Matthews testified that Mother had attended some treatment for her mental health issues, her mental healthcare provider informed him that Mother was no longer under their care, and that she was not successfully discharged from their program. *Id.* at 23-24. Matthews further testified that Mother did not complete the release and consent forms needed so that he could receive information about the progress she made while in treatment. *Id.* at 24-25. Additionally, Matthews stated that he had safety concerns because of Mother's inability to manage her anger. *Id.* at 29, 53. Specifically, Matthews testified that Mother accused him of sexually inappropriate behavior and that she threatened to sue the members of CUA and DHS for harassing her and violating her rights. *Id.* at 34.

Consequently, based on the foregoing, Matthews stated that he had ongoing concerns about Mother's mental health and the current state of her sobriety. *Id.* at 51-53. Thus, the record supports a finding that Mother largely has not addressed, let alone remedied, the concerns that resulted in N.M.'s

removal from her care, and the orphans' court did not err in finding clear and convincing evidence to satisfy termination under the first two prongs of section 2511(a)(8).

We next consider whether the record supports the orphans' court's conclusion that there was clear and convincing evidence to terminate Mother's rights pursuant to the third prong of section 2511(a)(8) and section 2511(b). Although Mother cites caselaw related to section 2511(b), she makes no argument whatsoever regarding whether terminating her parental rights best serve the developmental, physical, and emotional needs and welfare of N.M. *See* Mother's Brief at 13-14. As this Court has repeatedly stated, where an appellate brief fails to provide discussion of a claim and fails to develop an issue in any other fashion capable of meaningful review, the claim is waived. *In re Adoption of J.N.M.*, 177 A.3d 937, 942 (Pa. Super. 2018). Here, Mother waived any challenge with respect to the third prong of section 2511(a)(8) and section 2511(b) by failing to develop an argument in her brief. *See id.*

Even if Mother had preserved her challenge we would conclude that it lacked merit. Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

- 13 -

Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. **T.S.M.**, 71 A.3d at 267. "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." **Id.** (quotation marks omitted).

Additionally, our Supreme Court has explained that "the parental bond is but one part of the overall subsection (b) analysis[.]" **Interest of K.T.**, 296 A.3d 1085, 1113 (Pa. 2023). The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." **Id.** (citations omitted). "These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs." **Id.** Importantly, "[orphans'] courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." **Id.**

With respect to its needs and welfare analysis, the orphans' court explained:

Based on the evidence, this [c]ourt determined that N.M. would not suffer any irreparable harm if Mother's parental rights were terminated. N.M. has been DHS care continuously since January 2021. She has resided with her current kinship parent for approximately two years. N.M. is now three years old and has spent her entire life outside of the care and control of Mother. There was compelling testimony presented at the [termination] hearing that while N.M. acknowledges Mother on the screen during virtual visits, there is no parent-child bond or connection between N.M. and Mother. Mother has not consistently visited N.M. throughout the case, and often ends the visits early when she does attend. Mother's visits with N.M. were always supervised.

In determining the best interest of the child, this [c]ourt must consider both the needs and welfare of the child such as love, support, care, and comfort. N.M. does not look to Mother to meet these needs. She does not ask about Mother or express a desire to see her. Instead, N.M. looks to her kinship parent to provide her with love, support, care, and comfort. She also looks to her kinship parent to meet her basic needs as well as for safety and stability. While Mother is permitted to engage in N.M.'s medical care, she has failed to do so. The kinship parent, not Mother, has attended to N.M.'s medical needs throughout the case. N.M. is well-adjusted in her kinship home and is bonded to her kinship parent. Her current kinship parent is a pre-adoptive resource for N.M. For these reasons, [Matthews] testified that it would be in N.M.'s best interest for Mother's parental rights to be terminated so that N.M. could be freed for adoption.

Clear and convincing evidence has been presented to establish that there would be no irreparable harm caused to [N.M.] if this [c]ourt terminated Mother's parental rights. N.M. has been in care for over three years. She deserves permanency and should not wait indefinitely. Based upon the evidence presented, this [c]ourt properly found that it would be in the best interest of [N.M.] to grant DHS's petition to terminate the parental rights of Mother pursuant to § 2511(b) and for [N.M.]'s permanency goal to be changed to adoption.

Orphans' Court Opinion, 5/3/2024, at 22-23.

The record reflects that Mother's visits with N.M. were initially in-person

and supervised at the CUA offices but they had to be moved to DHS because

- 15 -

the CUA had to call the police during one of her visits. N.T., 1/30/2024, at 36-37. Issues continued with visits at DHS, as Matthews testified that Mother was verbally aggressive towards DHS staff. *Id.* at 38. Thus, Mother's visits with N.M. were changed to virtual visits. *Id.* at 39. Matthews explained that consequently, the frequency of Mother's visits with N.M. deteriorated, stating that Mother's visitation was "sporadic," that she would often go more than a month without visiting with N.M., and that sometimes the visits would be as short as five minutes. *Id.* at 39-40.

Regarding the relationship between N.M. and Mother, Matthews testified that while N.M. acknowledged Mother during visits, no parent-child bond exists between them. *Id.* at 43. Matthews explained that N.M. does not ask about Mother, nor does she express a desire to see her. *Id.* In contrast, Matthews testified that N.M. is bonded to her kinship parental, Mother's cousin, with whom N.M. has resided for approximately two years. *Id.* at 46-47. Matthews stated that N.M. calls the kinship parent "mom," and that N.M. looks to her kinship parent to meet her everyday needs, her medical needs, and her emotional needs, including love, support, care, and comfort. *Id.* at 47-48. Consequently, Matthews further testified N.M. would not suffer any irreparable harm if Mother's parental rights were terminated. *Id.* at 44. Lastly, Mother herself conceded that she was not currently capable of caring for N.M. *Id.* at 149-50.

Based on the record before us and the standard of review we must employ, we discern no abuse of discretion in the orphans' court's conclusion that N.M. is bonded to her kinship parent, that the kinship parent best meets N.M.'s needs and welfare, and that N.M. will not be irreparably harmed by terminating Mother's parental rights. Accordingly, we conclude that the orphans' court did not err in determining that N.M.'s developmental, emotional, and physical needs and welfare are best met by terminating Mother's parental rights under the third prong of section 2511(a)(8) and 2511(b).

As the orphans' court's determination pursuant to section 2511(a)(8) and (b) is supported by the record, we must affirm the decree terminating Mother's parental rights to N.M. **See C.M.**, 255 A.3d at 358-59.[4]

Decree affirmed. Order affirmed.

Judge McLaughlin joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

_____

[4] We note that although Mother has waived any claims regarding the goal change to adoption by failing to raise any argument, our decision to affirm the orphans' court's termination decree necessarily renders moot the decision to change N.M.'s permanency goal to adoption. **In re Adoption of A.H.**, 247 A.3d 439, 446 (Pa. Super. 2021).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/29/2024